[Crim. No. 12822.   Second Dist., Div. Four.   Sept. 21, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID
RICHARD BARBOSA, Defendant and Appellant.

582

T. Anthony Sanfilippo, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with grand theft from the person in violation of subdivision 2 of section 487 of the Penal Code. He pled not guilty; trial by jury was duly waived; the case was submitted on the transcript of the testimony taken at the preliminary examination together with additional testimony.[1] Defendant was found guilty as charged; probation was denied;[2] defendant was sentenced to state prison, the court invoking the provisions of sections 1168 and 1202b of the Penal Code. Defendant has appealed; we reverse the judgment.

The victim testified that, on March 29, 1966, at a time which she estimated as being between 10:30 and 11 a.m., she was walking on the east side of Broadway, in the City of Los Angeles, near the intersection of 85th Street. She noticed a Mexican boy following her (defendant is a young Mexican). The boy snatched her purse, ran across Broadway and into a burned-out building on the west side of that street. The victim was unable to identify defendant as the thief. She also crossed the street and went into a liquor store where she told of her loss and caused the police to be notified. When she came out of

---

[1] The preliminary examination antedated the decision in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974]; the trial began after that decision. The preliminary transcript contained testimony by a police officer concerning statements made to him by defendant, after his arrest, and after a warning adequate under *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], but not adequate under *Miranda*. On motion of defense counsel, that portion of the preliminary transcript was stricken.

[2] No motion for new trial was made.

the liquor store, she saw two Negro boys beating up a Mexican boy in front of the burned building. The boys told her "they would take me back and show me where he left the purse." The victim found her purse, with the contents strewn on the ground. The Mexican boy had broken away from his Negro assailants and had recrossed to the east side of Broadway. When the police arrived, they were told by "a man" that "that kid ran across the street and just snatched the woman's purse." The police drove to an alley east of Broadway where they found and arrested defendant. After defendant's arrest he was handcuffed; while he was being escorted to the squad car, he broke away but was quickly caught and taken to jail. He had injuries indicative of a recent fight.

At the trial, a police officer testified that, while defendant was being driven to a hospital for medical attention and to the police station, he was asked his name and occupation, but gave no answers other than profanity. On cross-examination, the following occurred:

"BY MR. KOJIMA:

"Q Officer, did you inform the defendant of his rights at the vehicle located at 8510 Broadway? A In the police vehicle, yes.

"Q And what did you say?

"MR. PREGERSON: I'll object to this as being irrelevant.

"THE COURT: I don't see what the purpose of it is.

"MR. KOJIMA: If he told him he didn't have to say anything, your Honor, it certainly goes to show that he was following the advice of the police officer. So that is whatever ——

"THE COURT: Relating to the crime. That does not apply to investigatory questions as to identity and residence.

"MR. KOJIMA: That depends on the defendant's interpretation of the officer's admonitions as to his constitutional rights.

"THE COURT: Well, I am going to overrule it.

"Q By MR. KOJIMA: What rights did you advise him, sir?

"MR. PREGERSON: I think I objected to that.

"THE COURT: I sustained the objection.

"MR. KOJIMA: I thought you said 'overruled,' your Honor.

"THE COURT: I overruled your argument."

Clearly, this was error. The bald statement that the officer had informed defendant of "his rights" is a pure conclusion, telling us nothing as to whether or not the warning complied with constitutional requirements, or (possibly)

went beyond them.[3] As defense counsel argued, until we know what was told defendant, we cannot know that his refusal to answer preliminary questions going to identity were not a compliance with his understanding of the "warning." Without such a foundation, not only are we faced with a "silent record," but the testimony as to silence becomes meaningless.

■ The Attorney General argues that any error in the ruling just discussed was nonprejudicial by reason of the following colloquy at the close of counsel's argument to the judge: "As to the defendant's refusal to say anything to the police officer, I again say that is the exact right that the Supreme Court is attempting to assert for the poor defenseless defendants; and that because of this particular reason the Miranda case has been decided the way it was; and I will assert the right of the defendant to refuse to say anything to the police officers, and that certainly is not an indication of his guilt.

"The Court: Well, Mr. Kojima, your argument might have had a little more weight if the defendant hadn't tried to run away.

"Guilty as charged."

We disagree. ■ Not only can we see no indication that the trial court had actually retreated from the erroneous position taken earlier, but the comment on flight was also erroneous. This is not a case of flight by a person accosted by the police at the scene of a crime and more or less contemporaneously therewith, nor is it a case of flight of a person otherwise identified with the crime where evidence of flight may go to the issue of intent. There is no evidence that defendant was aware of the ground of his arrest. His attempt to escape from police custody, at the most, indicates a consciousness of some past conduct that might cause him trouble; it indicates nothing at all with reference to this particular crime.

■ We have set forth above the totality of the evidence against defendant. The two Negro boys were never identified nor interviewed and (of course) never testified. So also the "man" on the street corner remains no more than an unidentified informant whose hearsay identification was interjected into the record. The victim was unable to identify defendant as the thief. While it is possible that defendant is guilty, the

---

[3] Of course, we do not imply that, in a case tried after *Miranda,* such a conclusionary answer may not be sufficient if defense counsel makes no objection and does not seek to bring out the exact language used. (Cf. *People* v. *Carter* (1967) 251 Cal.App.2d 400, 402 [59 Cal.Rptr. 394].)

record before us presents only a set of assumptions based on hearsay of the least possible value.[4] A conviction on such a record may not stand.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

[4]We note that the prosecutor's own summation of the case points up the lack of evidence adequate to meet the standard required in criminal cases. He said: "MR. PREGERSON: The victim has testified that it was a person of Latin extraction that took her purse. She said she can't identify the person but she does say the person ran over to the burned out building across the street. A few minutes later she says two teenagers were beating up on somebody in that particular building; she recovers her purse and she sees the person that is being beaten up on run over to the east side of Broadway. That is where the defendant is arrested, on the east side of Broadway in an alley just a few minutes later. The defendant had some medical treatment administered to him which would indicate that he was involved in some sort of a fight. It seems apparent to me that what we have here is a situation where a woman has a purse taken, she can't be positive that the defendant is the person who took the purse but it seems under all the circumstances that the defendant is the person who took the purse; she yelled for help; it seems reasonable to assume that the two teenagers heard her call, started beating up on the person who was running; it indicates that the person who did take the purse was stopped cold because the purse was found there right by the burned out building; then the last that is seen of this person he is running back east across Broadway and that's where he is arrested.

"In addition there is the fact that the defendant wouldn't even give his name to the arresting officers and created a ruckus."